UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD ALEXANDER LAPOTSKY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINE WORMUTH,<br>Secretary of the Army,<br><br>Defendant.[1] | No. 20-cv-93-MAU |

## MEMORANDUM OPINION

Edward Alexander Lapotsky ("Lapotsky") brings this action against Defendant Secretary of the United States Department of the Army ("Defendant" or "Army"), alleging one count of national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. *See* ECF No. 1 ¶¶ 1, 33-38. Lapotsky argues that Defendant's asserted rationale for not hiring him was clearly erroneous and pretext for discrimination. *See generally* ECF No. 34.

Before the Court is the Army's Motion for Summary Judgment. ECF No. 32. Because Lapotsky has failed to raise a genuine issue of material fact warranting a trial on his claim, the Court **GRANTS** the Army's motion.

## FACTUAL SUMMARY

In June 2015, Lapotsky applied for the position of Traffic Management Specialist ("TMS") in the 21st Theater Sustainment Command, Kaiserslautern, Germany. ECF No. 32-2 ¶ 4; ECF No.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Christine Wormuth, current Secretary of the United States Army, has been substituted for Ryan McCarthy.

1

34-1 at 7.  In its vacancy announcement for the TMS position, the Army informed applicants that U.S. citizens under "ordinary resident" status were not eligible for appointment pursuant to the National Atlantic Treaty Organization ("NATO") Status of Forces Agreement ("SOFA") and the relevant Army regulation.  ECF No. 32-2 ¶ 6.  Lapotsky, whose national origin is German, was born with dual citizenship of the United States and Germany, but later renounced his German citizenship.  ECF No. 34-1 at 6.  Lapotsky enlisted in the U.S. Army Reserves in November 2010 and later became an active-duty Sergeant with the U.S. Army Reserve Europe.  *Id.*; ECF No. 32-1 ¶ 1.  Lapotsky was released from active military service in September 2013, with continued reservist obligations through November 2018.  ECF No. 34-1 at 6-7.

After interviewing Lapotsky on August 11, 2015, the Army tentatively selected him for the TMS position pending verification of his eligibility and required him to complete a conditions of employment letter.  ECF No. 32-2 ¶¶ 7-9.  In the letter, the Army required Lapotsky to provide his residence history and to certify that he did not have "ordinary resident" status.  *Id.* ¶ 11; ECF No. 9-3 at 139.  The Army provided the definition of "ordinary resident" status, which includes a person residing in Germany for one year or more without status as a member of the U.S. Forces or civilian component (as defined by the NATO SOFA).  ECF No. 32-2 ¶ 10.  In his response, Lapotsky certified that he did not have "ordinary resident" status.  *Id.* ¶ 11; ECF No. 9-3 at 139.

The Army later reviewed Lapotsky's responses and noticed, based on his residence history, that he might be an "ordinary resident" of Germany.  ECF No. 32-2 ¶ 12.  After the Army asked Lapotsky about his residency history and citizenship, Lapotsky informed the Army that he previously held dual citizenship.  *Id.* ¶ 13.  On January 13, 2016, the Deputy Chief of the Foreign Law Branch for US Army Europe provided a written legal opinion that Lapotsky had "ordinary resident" status because he resided in Germany for more than one year "without affiliation with"

the U.S. Forces.  *Id.* ¶ 16; ECF No. 9-3 at 127-30.  On January 22, 2016, the Army informed Lapotsky that it had rescinded the tentative offer because the Army determined that Lapotsky was an "ordinary resident," which made him ineligible for the TMS position.  ECF No. 32-2 ¶ 15.

## PROCEDURAL HISTORY

Lapotsky initially contacted an equal employment opportunity ("EEO") counselor on December 15, 2015 and filed a formal EEO complaint on January 20, 2016.  ECF No. 1 ¶¶ 7-8.  Lapotsky claimed that the Army discriminated against him when it denied him employment due to its determination that he was "ordinarily resident."  *See* ECF No. 9-3 at 12-13.  On October 11, 2019, the EEOC dismissed Lapotsky's claim.  ECF No. 24 ¶ 9.  Lapotsky filed this Complaint on January 13, 2020.  ECF No. 1.

## ANALYSIS

### I.     Standard of Review

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Anderson*, 477 U.S. at 247-48.  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  The Court's inquiry is essentially "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.*" Id.* at 251-52.

On summary judgment, a reviewing court must take the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *See, e.g.*, *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020). However, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" and, instead, must point to specific facts in the record that reflect a genuine issue warranting trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In doing so, the non-movant must cite competent, admissible evidence and may not rely on "statements that are impermissible hearsay or that are not based on personal knowledge." *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 327 (D.D.C. 2010) (internal quotation marks and citation omitted). Conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## II.     Title VII of the Civil Rights Act of 1964

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against its employees and applicants for employment based on race, sex, or national origin, among other characteristics. 42 U.S.C. §§ 2000e-2(a), -16(a); *see also Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019); *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). For claims of intentional discrimination, "[p]roof of illicit motive is essential," and the employee "at all times" maintains the burden to prove "that the defendant intentionally discriminated against" him. *Figueroa*, 923 F.3d at 1086 (quoting *Segar v. Smith*, 738 F.2d 1249, 1265, 1267 (D.C. Cir. 1984)). Under the statute, "national origin" is construed as "the country

where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).

Where there is only circumstantial evidence of discrimination, the *McDonnell Douglas* burden-shifting framework governs the analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *see also Figueroa*, 923 F.3d at 1086 (citing *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016)). Under this framework, the plaintiff "must first make out a prima facie case" of discrimination. *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019). To do so, the plaintiff must show that: (1) he is part of a protected class under Title VII; (2) he suffered a cognizable adverse employment action; and (3) the action gives rise to an inference of discrimination. *Wheeler*, 812 F.3d at 1113-14. The burden next shifts to the employer to "come forward with a legitimate reason for the challenged action." *Iyoha*, 927 F.3d at 566. Finally, if the employer carries its burden of production, the "burden then shifts back" to the employee, who must prove that, despite the employer's proffered reason, he has been the victim of intentional discrimination. *Wheeler*, 812 F.3d at 1114.

"When the employer properly presents a legitimate, nondiscriminatory reason, the District Court 'need not—*and should not*—decide whether the plaintiff actually made out a prima facie case.'" *Figueroa*, 923 F.3d at 1087 (quoting *Brady*, 520 F.3d at 494). Instead, the Court should focus on one central question: whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee . . . ." *Brady*, 520 F.3d at 494. To do so, the plaintiff must demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015). Further,

"courts are without authority to second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Waterhouse v. District of Columbia*, 298 F.3d 989, 995 (D.C. Cir. 2002) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal quotation marks omitted). Accordingly, "[o]nce the employer has articulated a non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." *Fischbach*, 86 F.3d at 1183 (internal quotation marks omitted).

### III. Lapotsky's National Origin Discrimination Claim

Lapotsky's sole claim[2] is that the Army unlawfully discriminated against him based on his German national origin when it rescinded its tentative job offer for the TMS position. ECF No. 34 at 1. Defendant argues that it had a legitimate, non-discriminatory basis for rescinding Lapotsky's tentative job offer, which is that: (1) any individual with "ordinary resident" status under the NATO SOFA and the relevant Army regulation was ineligible for the position; and (2) Lapotsky had "ordinary resident" status. ECF No. 32-1 at 5-8.

#### A. Defendant's Legitimate, Non-discriminatory Reason for Rescinding Lapotsky's Offer.

Lapotsky does not dispute Defendant's assertions that individuals with "ordinary resident" status were ineligible for the TMS position and that Defendant determined Lapotsky had "ordinary resident" status. ECF No. 34-1 at 3, 5. On this record, there is no genuine dispute that Defendant has offered a legitimate, non-discriminatory reason for rescinding Lapotsky's job offer. Under the *McDonnell-Douglas* framework, the burden, therefore, shifts to Lapotsky to raise a material factual dispute as to whether Defendant's proffered basis for rescinding his offer was

---

[2] Lapotsky initially also alleged a claim of racial discrimination, but voluntarily dismissed that count. *See* Minute Order, *Lapotsky v. Wormuth*, 20-cv-93-MAU (Nov. 8, 2022) (dismissing racial discrimination claim with prejudice).

pretext for intentional national origin discrimination.  At this stage, the Court "must conduct one central inquiry . . . : whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  *Iyoha*, 927 F.3d at 566 (internal quotation marks omitted).

### B. Lapotsky has Failed to Raise a Genuine Issue of Material Fact that Defendant's Proffered Reason for Rescinding the Tentative Job Offer was Pretext for National Origin Discrimination.

Viewing the facts in Lapotsky's favor, Lapotsky fails to meet his burden to raise a genuine dispute of material fact that Defendant discriminated against him when it rescinded the tentative job offer.  First and foremost, Lapotsky does not point to any evidence in the record that Defendant knew of Lapotsky's German national origin.  This alone is dispositive.  *See Evans v. Sebelius*, 716 F.3d 617, 623 (D.C. Cir. 2013) (affirming grant of summary judgment to defendant on racial discrimination claim because the record contained no evidence that defendant was aware of plaintiff's race); *Mousselli v. Duke*, 266 F. Supp. 3d 74, 78 (D.D.C. 2017) ("[I]t is common sense that a decisionmaker cannot discriminate against an employee on the basis of religion or national origin if the decisionmaker does not know the employee's religion or national origin."), *aff'd sub nom. Mousselli v. Nielsen*, 754 F. App'x 7 (D.C. Cir. 2018).

Lapotsky argues that, because Defendant learned that he was previously a dual citizen of the United States and Germany when it assessed his eligibility for the position, "[a] reasonable inference is that Defendant was aware that Mr. Lapotsky's national origin was German, or at the very least that Mr. Lapotsky was likely German."  ECF No. 34 at 11.  This, without more, is insufficient to raise a triable issue here.  Although Lapotsky argues that he presents a "justifiable inference that must be drawn in [his] favor," *id.*, he is only entitled to that inference if it is "reasonably probable, and based on more than speculation."  *Rogers Corp. v. EPA*, 275 F.3d 1096,

1103 (D.C. Cir. 2002) (internal quotation marks and citation omitted).  The information that Defendant learned from Lapotsky about his citizenship—that he was an American citizen who previously held dual citizenship with the United States and Germany—does not on its own create a reasonable inference that Defendant knew that Lapotsky's national origin was German.[3]

Nevertheless, even assuming there was evidence that the Army knew Lapotsky's national origin, Lapotsky's claim still fails because there is no genuine dispute that the Army believed in its reasoning.  As the D.C. Circuit has stated, the Court will not find pretext if "the employer honestly believes in the reasons it offers."  *Fischbach*, 86 F.3d at 1183.  Even viewing the facts in the light most favorable to Lapotsky, there is no evidence to suggest that Defendant did not honestly believe in its assessment regarding Lapotsky's eligibility for the TMS position.  Far from it: it is undisputed that the Army confirmed its determination of Lapotsky's "ordinary resident" status, as reflected in a legal opinion from the Deputy Chief of the Foreign Law Branch for US Army Europe.  ECF No. 32-2 ¶ 16; ECF No. 9-3 at 127-30.[4]

Lapotsky's remaining arguments are without merit.  He asserts, for example, that Defendant provided "shifting reasons" for its decision to rescind his job offer, but he fails to point to any evidence to support that claim.  ECF No. 34 at 3, 12.  Lapotsky also appears to argue that Defendant violated its own hiring procedures, and therefore demonstrated pretext, when it made a tentative offer to him before it determined that he was an "ordinary resident."  *See id*. at 3, 11-12.

---

[3]     Lapotsky does not provide any authority to support his argument that it is reasonable to infer on these facts that Defendant was aware of his national origin.  *See* ECF No. 34 at 11.

[4]     Lapotsky argues that he was not an "ordinary resident" because he remained a member of the U.S. Army Reserves, and therefore the U.S. Forces, after being released from active-duty service in September 2013.  ECF No. 34 at 4-8.  The Court need not delve into whether Lapotsky was an "ordinary resident" as a matter of law because, for the reasons set forth above, he has failed to raise a genuine issue of material fact that the Army's decision was pretext for or motivated in any way by unlawful national origin discrimination.

Again, however, Lapotsky fails to point to any evidence that Defendant's hiring practices or procedures required Defendant to determine or vet an applicant's "ordinary resident" status during its initial review of applications. Although it is true that Defendant tentatively offered Lapotsky the TMS position despite Army regulations providing that "[a]pplications will not be accepted from persons with ordinarily resident status," Lapotsky does not allege that the application for the TMS position sought information related to the definition of an "ordinary resident." U.S. Army in Europe Supplement 1 to Army Regul. 690-300.301, ¶ 5-1.2a(1). Even assuming the Army incorrectly interpreted or applied the regulation with respect to the order in which it sought the information from Lapotsky, there is still no evidence sufficient to raise a genuine dispute as to pretext or unlawful discrimination. *Fischbach*, 86 F.3d at 1183.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Army's motion for summary judgment, ECF No. 32. A separate order will issue.

**SO ORDERED**.

Date: September 28, 2023

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE